2010 ND 20

**Brandi C. HALBERG, Plaintiff and Appellant**

v.

**Daniel J. HALBERG, Defendant and Appellee.**

**No. 20090168.**

Supreme Court of North Dakota.

Jan. 26, 2010.

Jacey Layne Johnston (argued) and Dewayne A. Johnston (appeared), Grand Forks, N.D., for plaintiff and appellant.

Leslie Johnson Aldrich, Fargo, N.D., for defendant and appellee.

CROTHERS, Justice.

[¶ 1] Brandi Halberg appeals from an amended judgment ordering Daniel Halberg to pay $792 per month in child support. We reverse and remand for recalculation of Daniel Halberg's child support obligation, concluding the district court misapplied the child support guidelines.

I

[¶ 2] Brandi and Daniel Halberg were married in 1993, divorced in August 2006, and have three minor children together. She was awarded custody of the children. The parties stipulated to Daniel Halberg's child support obligation, and the court ordered Daniel Halberg pay $600 per month in child support and one hundred percent of the unreimbursed medical expenses.

[¶ 3] Daniel Halberg operates a trucking company, hauling oil in western North Dakota out of Tioga. He incorporated his trucking business in September 2008, under the name Halberg Trucking, Inc. Daniel Halberg and his father each own fifty percent of the company's stock. Daniel Halberg is a paid employee of the corporation and is the only truck driver the company employs. He is also involved in running the corporation, and he testified he acts as its CEO. Before the business was incorporated, he was a self-employed truck driver and ran his trucking business as a

sole proprietorship. When he incorporated the business, he transferred all the trucking assets to the corporation. He did not begin hauling oil until the business was incorporated.

[¶ 4] Daniel Halberg rents a mobile home with another person in Tioga to live in when he is working. He owns a second mobile home in Lakota that he considers his primary residence, although he testified he stays in Tioga approximately twenty days a month.

[¶ 5] In September 2008, the Regional Child Support Enforcement Unit moved to amend the judgment to include statutory language about medical insurance. Daniel Halberg responded to the motion and moved to amend the judgment, requesting the court order that the parties split any unreimbursed medical expenses. Brandi Halberg responded to his motion and moved to modify Daniel Halberg's child support obligation.

[¶ 6] After an evidentiary hearing, the district court found Daniel Halberg is underemployed, imputed his income and calculated his child support obligation based on the imputed income. The court ordered Daniel Halberg pay $792 per month in child support and all unreimbursed medical expenses.

II

[¶ 7] Brandi Halberg argues the district court misapplied the law by imputing Daniel Halberg's income to determine his support obligation instead of calculating his actual income. She claims his tax return is unreliable and does not accurately reflect his actual income because he received benefits from the corporation that he did not include in his income. She contends the court should use the "real numbers" to determine his income based on his personal bank statements and on the business's general ledger showing what expenses the business paid and how much money was deposited in his personal checking account.

[¶ 8] " 'Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review.' " *Verhey v. McKenzie*, 2009 ND 35, ¶ 5, 763 N.W.2d 113 (quoting *Buchholz v. Buchholz*, 1999 ND 36, ¶ 11, 590 N.W.2d 215). The district court errs as a matter of law if it fails to comply with the child support guidelines in determining an obligor's child support obligation. *Verhey*, at ¶ 5.

[¶ 9] The district court found Daniel Halberg is self-employed and the self-employment provisions of the child support guidelines apply, but the court also found he is underemployed and imputed his income:

"Brandi contends that Daniel is not reporting all of his income and that many items which he paid from his business checking account are actually personal expenses, which should not be deducted from his income for child support purposes. Daniel concedes that he pays from his business account some personal expenses and vice versa from his personal checking account.

. . . .

"Brandi's attorney seems to argue, without citing, that the terms of N.D. Admin. Code 75–02–04.1–05, 'Determination of Net Income from Self–Employment' should govern. Brandi argues that the income of Daniel for child support purposes for 2008 should be $70,927.24. The Court can not agree with this amount. This section of the North Dakota Administrative Code

should govern, however the income calculation must use 'total income, for *internal revenue service purposes*' (Emphasis added). Many of the items which Brandi includes as personal income could well be legitimate business expenses for internal revenue purposes. For example internet service and hardware bills are added back in as personal expenses when they appear to be business expenses. Clearly, many of the items listed in Plaintiff's brief as personal income are not personal income under IRS rules but are legitimate business deductions. Other items paid out of his business account are clearly not legitimate business expenses but should be considered personal expenses, such as a haircut. The burden is on the movant seeking to increase the child support to show that the amount being paid is not in conformance with the child support guidelines and what the correct amount should be. Outlining a list of bills paid to various entities without showing that they are not business expenses under IRS rules is not sufficient. The records do not indicate that the Defendant is accumulating a large amount of cash reserves or buying an expensive vehicle for his personal use. The pickup he drives is high mileage; he lives in a trailer house in Lakota purchased for $13,000. He shares a trailer at Tioga.

. . . .

"The five-year average is not acceptable as it does not truly reflect what the Defendant's income is likely to be.

"The Court finds that Daniel is underemployed. *See* N.D. Admn. Code § 75–02–04.1–07(2). He lists his Adjusted Gross Income for 2008 at $13,351. This is less than .6 of the prevailing wage of a person with a similar work history and occupational qualifications. Daniel is an experienced truck driver working in the Tioga area. An experienced truck driv-

er should make $46,461 based on the ND Job Service Report. The income to be imputed is .6 of this or $27,876. *See* N.D. Admn. Code § 75–02–04.1–07(3). He has other VA Disability payments of $1,404 per year.

"This equates to a child support obligation of $792 per month."

[¶ 10] " '[A] proper finding of net income is essential to determine the correct amount of child support under the child support guidelines. . . .' " *Gunia v. Gunia,* 2009 ND 32, ¶ 13, 763 N.W.2d 455 (quoting *Berge v. Berge,* 2006 ND 46, ¶ 8, 710 N.W.2d 417). To determine an obligor's net income the court must first determine the obligor's gross income and then subtract the items listed in N.D. Admin. Code § 75–02–04.1–01(7). *Steffes v. Steffes,* 1997 ND 49, ¶ 31, 560 N.W.2d 888; *see also Hieb v. Hieb,* 1997 ND 171, ¶ 8, 568 N.W.2d 598. Gross income is income from any source, in any form, including:

"salaries, wages, overtime wages, commissions, bonuses, employee benefits, currently deferred income, dividends, severance pay, pensions, interest, trust income, annuities income, gains, social security benefits, workers' compensation benefits, unemployment insurance benefits, distributions of retirement benefits, . . . veterans' benefits (including gratuitous benefits), gifts and prizes to the extent they annually exceed one thousand dollars in value, spousal support payments received, refundable tax credits, value of in-kind income received on a regular basis, children's benefits, income imputed based upon earning capacity, military subsistence payments, and net income from self-employment."

N.D. Admin. Code § 75–02–04.1–01(5).

[¶ 11] The child support guidelines include specific provisions addressing how the court should determine an obligor's

income from self-employment. Under the child support guidelines, self-employment is:

> "employment that results in an obligor earning income from any business organization or entity which the obligor is, to a significant extent, able to directly or indirectly control.... [I]t also includes any activity that generates income from ... corporations ... regardless of form and regardless of whether such activity would be considered self-employment activity under the Internal Revenue Code."

N.D. Admin. Code § 75–02–04.1–01(10). When an obligor is self-employed, the guidelines generally require the court to average an obligor's self-employment income from the most recent five years of self-employment, if the self-employment activity was undertaken on a substantially similar scale, to determine the obligor's self-employment income. N.D. Admin. Code § 75–02–04.1–05(4). When an obligor exercises direct or indirect control to a significant extent over a corporation that pays its own taxes, a portion of the corporation's taxable income must also be added to the obligor's individual income to determine the obligor's net income from self-employment. N.D. Admin. Code. § 75–02–04.1–05(1)(b).

[¶ 12] The evidence supports the district court's finding that Daniel Halberg is self-employed and that the self-employment provisions of the child support guidelines apply. The court did not use a five-year average to determine his income from self-employment because the court found the five-year average would not accurately reflect what his income is likely to be. The guidelines provide a court may use a shorter period to average an obligor's income if the self-employment activity has not been operated on a substantially similar scale for five years. N.D. Admin. Code

§ 75–02–04.1–05(4). The child support guidelines also provide that "[i]f circumstances that materially affect the child support obligation have changed in the recent past or are very likely to change in the near future, consideration may be given to the new or likely future circumstances." N.D. Admin. Code § 75–02–04.1–02(8).

[¶ 13] The evidence supports the court's finding that the five-year average does not accurately reflect what Daniel Halberg's income is likely to be. Evidence shows his trucking business was incorporated as a C corporation in September 2008. After the corporation was formed, he began hauling oil in western North Dakota, which he testified he expected would be more profitable than his prior work. His tax returns are separate from the corporation's tax returns, and he now receives a salary and benefits from the corporation. The court's finding is not clearly erroneous, and the court did not err in using a shorter period to determine Daniel Halberg's self-employment income.

[¶ 14] The court determined Daniel Halberg's self-employment income based on his 2008 tax return. The court found "[Daniel Halberg] lists his Adjusted Gross Income for 2008 at $13,351." The 2008 tax return included his income from business gains and his salary from the corporation between September 1, 2008 and December 31, 2008.

[¶ 15] Although the district court found Daniel Halberg's net income from self-employment, the court did not consider any other types of income to determine his gross income before finding he is underemployed. The court found that an experienced truck driver should make $46,461, that Daniel Halberg's adjusted gross income of $13,351 is less than sixth-tenths of the prevailing wage for an experienced

truck driver and, therefore, that Daniel Halberg is underemployed.

[¶ 16] A court may find an obligor is underemployed and impute the obligor's income, if "the obligor's gross income from earnings is significantly less than the statewide average earnings for persons with similar work history and occupational qualifications." N.D. Admin. Code § 75–02–04.1–07(1)(b). "An obligor is presumed to be underemployed if the obligor's gross income from earnings is less than ... [s]ix-tenths of the statewide average earnings for persons with similar work history and occupational qualifications...." N.D. Admin. Code § 75–02–04.1–07(2). Before a court can find an obligor is underemployed and impute his income, the court must first determine the obligor's gross income from earnings. N.D. Admin. Code § 75–02–04.1–07(2). An obligor's earnings include in-kind income. N.D. Admin. Code § 75–02–04.1–07(1).

[¶ 17] The district court did not follow the guidelines to calculate Daniel Halberg's gross income. When a court applies N.D. Admin. Code § 75–02–04.1–05 to determine an obligor's net income from self-employment, the income calculated "is an example of gross income and is subject to the deductions from gross income set forth in subsection 7 of section 75–02–04.1–01, to the extent not already deducted when calculating net income from self-employment." N.D. Admin. Code § 75–02–04.1–05(9). All other types of income, including in-kind income, must be added to the net income from self-employment to calculate the obligor's gross income before the court can find an obligor is underemployed.

[¶ 18] The court was faced with a difficult task in this case because evidence establishes Daniel Halberg has mixed his finances with the corporation's finances, making it difficult to determine the extent of his gross income. However, the court was not limited to considering the income he claimed on his tax return. Income may be "documented through the use of tax returns, current wage statements, and other information to fully apprise the court of all gross income." N.D. Admin. Code § 75–02–04.1–02(7).

[¶ 19] Here, evidence establishes that the corporation pays many of Daniel Halberg's personal expenses and that he receives other employee benefits, including payment of his legal expenses, life insurance, medical insurance, the children's out-of-pocket medical expenses, his clothing and all of his housing expenses. Daniel Halberg testified and other evidence established that in 2008 the corporation paid $317 per month for medical insurance for him and the children; $300 per month for the mortgage on the home in Lakota; $450 per month for rent on the trailer home in Tioga; all the utilities for the home in Lakota, including electricity and fuel oil; his share of the utilities and food for the trailer in Tioga; his personal legal expenses; disability insurance; life insurance; liability insurance on a van that he personally owns but has given to his girlfriend to drive; out-of-pocket medical expenses for the children; a musical instrument for one of the children; furniture, including a bed for the home in Lakota and two coat racks; and his clothing. Daniel Halberg testified he does not consider the payment of these expenses as income because he "is not making money off it."

[¶ 20] The corporation pays the premiums on Daniel Halberg's disability, life, and medical insurance. Employee benefits are gross income for purposes of child support, unless "the employee does not have significant influence or control over the nature or amount...." N.D. Admin. Code § 75–02–04.1–01(5)(a)(2). If the

court finds Daniel Halberg has significant influence or control over the nature and amount of the employer-paid benefits, the benefits must be included in his gross income. *See Bleth v. Bleth,* 2000 ND 52, ¶ 9, 607 N.W.2d 577 (when an obligor is sole stockholder of a corporation and determines his own salary, the court should consider the obligor's salary, the corporation's earnings, life insurance paid by the corporation and other benefits the corporation provides); *Lawrence v. Delkamp,* 1998 ND 178, ¶¶ 16–17, 584 N.W.2d 515 (employer-paid premiums for dental insurance, life insurance, long-term disability insurance, and accidental death and disability insurance are income and should be included in the obligor's gross income).

■ [¶ 21] Some of the expenses the corporation pays for Daniel Halberg are in-kind income and must be included in calculating his gross income. In-kind income is:

> "the receipt from employment or income-producing activity of any valuable right, property or property interest, other than money or money's worth, including forgiveness of debt (other than through bankruptcy), use of property, including living quarters at no charge or less than the customary charge, and the use of consumable property or services at no charge or less than the customary charge."

N.D. Admin. Code § 75–02–04.1–01(6). The court must consider the value of in-kind income and gifts in determining an obligor's gross income. *Cook v. Eggers,* 1999 ND 97, ¶ 6, 593 N.W.2d 781. In *Cook,* this Court reversed a district court's child support decision because the court failed to include the cash value of the obligor's in-kind income and gifts she received in determining her child support obligation, including weekly spending money, the use of a home rent free, vehicle and

health insurance, college tuition and fees, and trips to Europe and Mexico. *Id.* at ¶ 8. The value of the in-kind income Daniel Halberg receives from the corporation on a regular basis must be included in his gross income. Many of the expenses the corporation pays are expenses he would have to spend his disposable income on if the corporation did not pay them. The personal expenses the corporation pays for him are income for purposes of child support and must be included in his gross income when determining his child support obligation.

[¶ 22] Brandi Halberg claims the amounts the corporation paid in expenses relating to the pickup truck Daniel Halberg drives should be included in his gross income, including the payment to him that was used to pay off the loan on the vehicle, the vehicle's insurance, and maintenance expenses. Daniel Halberg testified the pickup truck is a company vehicle and he uses it for business and personal use because it is the only vehicle he has. However, Brandi Halberg contends the pickup truck is not a company vehicle, is not listed as a corporation asset and is owned by him personally.

■ [¶ 23] The district court did not make any findings about who owns the pickup truck. For purposes of calculating Daniel Halberg's gross income the court must determine who owns the vehicle. Whether the pickup truck is owned by the corporation or Daniel Halberg personally, he has received a benefit from the corporation, either through the personal use of the company vehicle or the payment of the expenses related to the vehicle, and the value of the benefit must be included in his gross income. If the corporation owns the vehicle, his personal use of the company vehicle is in-kind income and the value must be included in his gross income. N.D. Admin. Code § 75–02–04.1–01(6) (the use of property at no charge); *Cook,* 1999

ND 97, ¶ 8, 593 N.W.2d 781; *Wilhelm v. Wilhelm,* 1998 ND 140, ¶¶ 7–9, 582 N.W.2d 6 (child support amount was increased because of in-kind income, including use of corporation's vehicles). If he personally owns the vehicle, the auto insurance and maintenance expenses the corporation paid would be in-kind income and the money the corporation paid directly to him to pay off the loan on the vehicle would also be income. *Cook,* at ¶ 8 (payment of vehicle insurance is in-kind income).

[¶ 24] Brandi Halberg also claims other various expenses paid out of the business account before the business was incorporated should be included in his income. She claims he made child support payments and paid for trips that were not business related out of the business account. She also claims he took money out of the business account or transferred money to his personal account from his business account. However, these expenses occurred before incorporation when the business was a sole proprietorship and did not file a separate tax return. There is no evidence he deducted these amounts as business expenses on his 2008 tax return. Furthermore, the court found many of the items Brandi Halberg claimed were income were legitimate business deductions, including internet service and hardware bills. The evidence supports this finding.

[¶ 25] We conclude the district court failed to properly calculate Daniel Halberg's gross income before finding he was underemployed. We reverse the court's child support decision and remand for the court to recompute his gross and net incomes and determine his child support obligation. On remand the court must consider the employer benefits and any in-kind income Daniel Halberg received in determining his income and child support obligation. After his gross income is prop-erly calculated, his income may be imputed if the court finds he is still underemployed.

III

[¶ 26] We conclude the district court misapplied the law in calculating Daniel Halberg's child support obligation. We reverse and remand.

[¶ 27] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.